IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PARTHA A. RAI CHOWDHURI,

    Plaintiff,

    v.                                     Civil Action No. PX 16-3135

SGT, INC.,
CYBERDATA TECHNOLOGIES, INC.,

    Defendants.

******

**MEMORANDUM OPINION**

Pending in this employment discrimination case is a motion to dismiss or, in the alternative, for summary judgment filed by Defendant Cyberdata Technologies, Inc. ("Cyberdata") (ECF No. 22) and two motions for leave to file a surreply filed by Plaintiff Partha A. Rai Chowdhuri ("Plaintiff") (ECF Nos. 90, 91). The issues are fully briefed, and the Court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, the Defendant's motion is denied and Plaintiff's motions for leave to file a surreply are denied as moot. Also pending is Plaintiff's motion to proceed in forma pauperis. *See* ECF No. 68. Because Plaintiff appears to be indigent, this motion shall be granted.

**I.     BACKGROUND**[1]

On April 27, 2015, Defendant SGT, Inc. ("SGT") hired Plaintiff as a Software Engineer III. Plaintiff was assigned to SGT's Weather and Climate Computing Infrastructure Services ("WCCIS") contract, under which SGT served as a subcontractor to Defendant Cyberdata. *See*

---

[1] These facts are taken from Plaintiff's amended complaint and are accepted as true for purposes of assessing the sufficiency of his claim.

1

Amend. Compl., ECF No. 19 at 4.[2] Carmen Jenkins, a Cyberdata employee, headed the committee that interviewed Plaintiff and recommended his hiring for the WCCIS contract. *Id.*

Although SGT was Plaintiff's employer, Plaintiff alleges that Cyberdata maintained significant control over his work including supervision of his day-to-day activities, issuing work assignments, and conducting performance evaluations. Cyberdata also approved Plaintiff's requests for leave, maintained his time and attendance records, and furnished Plaintiff his work space and equipment. *Id.*

In September 2015, Plaintiff approached Jenkins and an SGT manager, Rexford Bowling, to complain that one of Plaintiff's colleagues, Jonas Okwara, had been given an unreasonable performance review and was ultimately fired because he is African-American. ECF No. 19 at 5. Jenkins responded by criticizing Plaintiff's poor spoken English and telling Plaintiff that he would be "placed in performance appraisal." *Id.*

Plaintiff also alleges that the Defendants deliberately implemented a plan to exclude non-caucasian code developers. By the fourth quarter of 2015, all of the non-caucasian developers had been discharged except for Plaintiff. *Id.* The discharged non-caucasian employees had comparable or higher qualifications than their similarly-situated caucasian employees. Prior to termination, Defendants had given the discharged non-caucasian employees unreasonable workloads and unsubstantiated poor performance reviews.

After Plaintiff complained about the above-described unfair treatment, Cyberdata subjected Plaintiff to multiple additional performance reviews from October 2015 through April 2016. *Id.* at 7. Plaintiff also found himself in "an unbearable and hostile employment environment," marked by false and disparaging commentary regarding his interactions with co-

---

[2] Defendants SGT and CyberData will be collectively referred to as "the Defendants" for the remainder of this Memorandum.

workers and his work abilities; hurtful jokes about his medical condition; and purposely confusing instructions regarding work assignments. *See id.* at 6–7.

On January 7, 2016, Plaintiff notified SGT that he planned to file a discrimination suit against it. Around that same time, he informed both SGT and Cyberdata that he was suffering from medical issues for which he would need leave from work for treatment. The Defendants, in response, increased his work load and performance evaluations, and falsely accused him of taking leave without permission. *Id.* at 7.

On January 22, 2016 and April 18, 2016, Plaintiff notified both Defendants that he filed administrative charges of discrimination against them with the Prince George's County Human Relations Commission and the Maryland Commission on Civil Rights. In response, Defendants escalated the unreasonable performance reviews, and tightened deadlines on Plaintiff's work assignments. *Id.* at 7–8. SGT then notified Plaintiff in writing on April 25, 2016 that he was terminated. *Id.* at 8. Although SGT claims that it removed Plaintiff from the WCCIS contract "at the customer[] [Cyberdata's] request," Plaintiff maintains that Cyberdata had no legitimate basis to fire him. *Id.* Plaintiff was then replaced with a white employee. *Id.* at 8.

On June 14 and 15, 2016, the Equal Employment Opportunity Commission ("EEOC") issued Plaintiff two right-to-sue letters. *Id.* at 3. Plaintiff filed his complaint in this Court on September 12, 2016 which he amended on December 8, 2016. ECF Nos. 1, 19. Plaintiff brings claims of retaliation and discrimination on account of his race, national origin, and color, as well as hostile work environment, in violation of Title VII of the Civil Rights Act of, 42 U.S.C. §2000e *et seq.*; 42 U.S.C. §1981; the Maryland Fair Employment Practices Act ("FEPA"), Md. Code Ann., State Gov't § 20–601; and § 2–222 of the Prince George's County Code. *See* ECF No. 19.

On December 20, 2016, SGT answered the amended complaint. Cyberdata filed its motion to dismiss or, in the alternative, for summary judgment on December 22. *See* ECF No. 22. Plaintiff's counsel withdrew her appearance on January 23, 2017. *See* ECF No. 28. Plaintiff, now proceeding pro se, responded to the motion. *See* ECF No. 78. Plaintiff has also filed a Motion for Leave to Proceed In Forma Pauperis, *see* ECF No. 68, and two Motions for Leave to File a Surreply, ECF Nos. 90, 91. The Court addresses each motion in turn.

## II. STANDARD OF REVIEW

Defendant Cyberdata styles its motion as one to dismiss, or in the alternative, for summary judgment and attaches exhibits to its motion. Pursuant to Fed. R. Civ. P. 12(d), materials beyond the four corners of the complaint may be considered only if the motion to dismiss is treated as a motion for summary judgment and Plaintiff is given an opportunity to respond. Fed. R. Civ. P. 12(d). Whether to convert a motion to dismiss to one for summary judgment is a matter within the Court's "complete discretion." *Sager v. Hous. Comm'n of Anne Arundel Cty.*, 855 F. Supp. 2d 524, 542 (D. Md. 2012). The Court's discretion, however, "should be exercised with great caution and attention to the parties' procedural rights." *Id.* (quoting 5C Charles Alan Wright et al., Federal Practice & Procedure § 1366, at 149 (3d ed. 2004, 2011 Supp.)). "In general, courts are guided by whether consideration of extraneous material 'is likely to facilitate the disposition of the action,' and 'whether discovery prior to the utilization of the summary judgment procedure' is necessary." *Id.* (internal citation omitted). Where, as here an unrepresented plaintiff has stated a facially valid claim for relief, this Court declines to treat the motion as one for summary judgment. *Cf. Strothers v. City of Laurel, Md.*, 118 F. Supp. 3d 852, 866 (D. Md. 2015).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and

internal quotation marks omitted). When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

### III. ANALYSIS

Cyberdata first argues that Plaintiff's Title VII claims against it must be dismissed because Plaintiff was employed by SGT, not Cyberdata. "An entity can be held liable in a Title VII action only if it is an 'employer' of the complainant." *Butler v. Drive Automotive Indus. of Am., Inc.*, 793 F.3d 404, 408 (4th Cir. 2015). But even if an entity is not plaintiff's formal employer, it may be considered a joint employer for purposes of Title VII liability if it exercises "sufficient control of the terms and conditions of [the plaintiff's] employment." *Id.* (internal

5

quotation marks omitted) (citing *Torres–Negrón v. Merck & Co.*, 488 F.3d 34, 40 n.6 (1st Cir. 2007)). The joint employer doctrine "prevents those who effectively employ a worker from evading liability by hiding behind another entity, such as a staffing agency." *Id.* at 410.

The United States Court of Appeals for the Fourth Circuit directs district courts to consider the following factors to determine whether an entity is properly considered a joint employer:

> (1) authority to hire and fire the individual;
>
> (2) day-to-day supervision of the individual, including employee discipline;
>
> (3) whether the putative employer furnishes the equipment used and the place of work;
>
> (4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;
>
> (5) the length of time during which the individual has worked for the putative employer;
>
> (6) whether the putative employer provides the individual with formal or informal training;
>
> (7) whether the individual's duties are akin to a regular employee's duties;
>
> (8) whether the individual is assigned solely to the putative employer; and
>
> (9) whether the individual and putative employer intended to enter into an employment relationship.

*Id.* at 414. Although none of these factors are dispositive, the first three are the most important. *Id.* As the Fourth Circuit explained:

> The first factor, which entity or entities have the power to hire the putative employee, is important to determining ultimate control. The second factor, to what extent the employee is supervised, is useful for determining the day-to-day, practical control of the employee. The third factor, where and how the work takes

place, is valuable for determining how similar the work functions are compared to those of an ordinary employee.

*Id.* at 414–15; *see also Akwei v. Burwell*, No. DKC 15-1095, 2016 WL 3440125, at *5 (D. Md. June 23, 2016).

Applying the *Butler* factors to the amended complaint demonstrates that Cyberdata was Plaintiff's joint employer for purposes of Title VII liability. The first factor weighs in favor of joint employment. Plaintiff specifically avers that Cyberdata's employee, Carmen Jenkins, oversaw the committee that interviewed Plaintiff and recommended his hiring. *See* Amend. Compl., ECF No. 19 at 4. Moreover, Cyberdata could and did direct SGT to fire Plaintiff. *Id.* at 8. Therefore, taking the facts as alleged in the amended complaint as true, Cyberdata's role in Plaintiff's hiring and firing supports Cyberdata's "ultimate control" over Plaintiff. *Cf. Crump v. TCoombs & Assocs., LLC*, No. 2:13-cv-707, 2015 WL 5601885, at *19 (E.D. Va. Sept. 22, 2015) (holding that the first factor indicated that the Navy was the plaintiff's employer because "the Navy had some role in hiring the [p]laintiff, [as] . . . it set the qualifications" for the position and that the Navy had at least partial authority to terminate the plaintiff).

Regarding the second factor, Cyberdata argues that it "had no control over matters governing the essential terms and conditions of employment of any SGT employees, including Plaintiff." ECF No. 22 at 9. However, Plaintiff's amended complaint specifically avers that Jenkins supervised his day-to-day work, assigned him tasks, evaluated his performance on multiple occasions, and was involved in promoting SGT employees. *Id.* Cyberdata also controlled the scope of Plaintiff's interaction with its government clients. The amended complaint, therefore, sufficiently alleges that Cyberdata exerted day-to-day control over Plaintiff's employment.

Plaintiff's amended complaint also puts forward facts to satisfy the remaining *Butler* factors. The amended complaint specifically notes that Plaintiff worked exclusively for the WCCIS/Cyberdata contract, that Cyberdata furnished and serviced the equipment he used during his employment, and that Cyberdata maintained control over Plaintiff's employment records, including his time and attendance sheets. *Id.* at 4–5. As pleaded, therefore, Cyberdata maintained "sufficient control of the terms and conditions of [his] employment" to be considered a "joint employer" with SGT for Title VII purposes. *Butler*, 793 F.3d at 408 (4th Cir. 2015).

Cyberdata alternatively argues that even if it is considered Plaintiff's joint employer, Plaintiff still cannot maintain his claims for discrimination, retaliation, and hostile work environment pursuant to Title VII because the amended complaint fails to establish a *prima facie* case for each claim. Cyberdata also emphasizes that legitimate non-discriminatory and non-retaliatory reasons support Plaintiff's termination. Cyberdata likewise maintains that because Plaintiff's Title VII claims fail, Plaintiff's discrimination and retaliation claims under 42 U.S.C. § 1981, FEPA, and § 2–222 of the Prince George's County Code also fail for the same reasons. *See* ECF No. 22 at 17; *Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc.*, 921 F. Supp. 2d 470, 483 n.20 (D. Md. 2013) ("Section 1981 and FEPA claims of discrimination are analyzed under the same framework as Title VII."); *Mabry v. Capital One, N.A.*, No. GJH-13-02059, 2014 WL 6875791, at *8 n.4 (D. Md. Dec. 3, 2014) (explaining that Section 2–222 of the Prince George's County Code largely tracks Title VII).

Although Cyberdata correctly articulates the *McDonnell Douglas* burden shifting framework applicable to Title VII discrimination claims,[3] reliance on *McDonnell Douglas* is

---

[3] To prove discrimination where no direct evidence of discriminatory animus exists, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) dictates a three-step order of proof: (1) the plaintiff must first establish a *prima facie* case of employment discrimination or retaliation; (2) the burden of production then shifts to the employer to articulate a non-discriminatory or non-retaliatory reason for the adverse

misplaced at the motion to dismiss stage. The *McDonnell Douglas* framework establishes "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002). Thus, a plaintiff in his complaint "need not plead facts sufficient to establish a *prima facie* case . . . to survive a motion to dismiss." *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). Rather, the complaint must simply include "sufficient factual allegations to support a plausible claim" of discrimination. *Id.* Plaintiff has done so here.

Specifically, Plaintiff alleges that he was a qualified and competent non-caucasian engineer capable of performing his job related duties. Plaintiff further alleges with specificity that he endured all manner of Defendants' prolonged unfavorable treatment, including termination, which his white counterparts were spared. Finally, Plaintiff avers that Defendants' adverse treatment was motivated by race, national origin, and color. When read as a whole, Plaintiff's allegations pass the "common sense plausibility analysis" necessary to allow the claims to proceed. *Id.* at 650. Cyberdata's motion to dismiss is therefore denied, and Plaintiff's motion to file a surreply is denied as moot.

## IV. CONCLUSION

For the reasons stated above, Defendant Cyberdata's motion to dismiss is denied. Plaintiff's motion for leave to proceed in forma pauperis is granted, and Plaintiff's motions for leave to file a surreply are denied as moot. A separate Order follows.

| 8/16/2017 | /S/ |
|---|---|
| Date | Paula Xinis |
| | United States District Judge |

---

action; finally (3) the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory or retaliatory. *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (internal citations omitted).